IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MCLAUGHLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 19-422 |
| | ) |
| MICHAEL ZAVADA, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

Plaintiff William McLaughlin has brought this pro se civil rights action arising out of conditions to which he was allegedly subjected in 2017 while incarcerated at the Fayette County Prison ("FCP") in Fayette County, Pennsylvania. On June 21, 2021, a Memorandum Opinion and Order were filed, granting in part and denying in part a motion for summary judgment filed by Defendants.[1] Specifically, Defendants' motion for summary judgment was granted only to the extent that Plaintiff's Fourteenth and Eighth Amendment claims were based on his claims related to overcrowded conditions, his temporary housing at the beginning of his incarceration and inadequate lighting, and denied in all other respects.

Pending before the Court is Defendants' motion for reconsideration (ECF No. 133). For the reasons below, their motion will be denied.[2]

**I. Relevant Procedural History**

On November 2, 2020, Defendants filed a motion for summary judgment (ECF No. 117). They argued that: 1) Plaintiff—who was a pretrial detainee from March 8, 2017 to September 11,

---

[1] The remaining defendants are Brian S. Miller, the Warden of the FCP, Michael Zavada, the Deputy Warden, Lt. Smith and Lt. Lenkey, both of whom are correctional officers, and Fayette County.

[2] The parties have fully consented to jurisdiction by a magistrate judge.

2017—could not maintain a claim for violation of his rights under the Fourteenth Amendment because the issues about he complained were minor and remedied shortly thereafter, so he could not establish that the individual Defendants acted with deliberate indifference; 2) he similarly could not demonstrate an Eighth Amendment violation based on conditions after September 11, 2017 when he became a convicted prisoner; 3) the individual defendants were either unaware of these conditions (Zavada, Miller) or were unable to remedy the situation (Smith, Lenkey); 4)there is no basis for municipal liability against Fayette County; and 5) he could not maintain a First Amendment retaliation claim against Zavada.

In rejecting most of these arguments, the Court noted that Defendants' summary of Plaintiff's testimony and his notes was not always complete and further, they failed to draw inferences in his favor as the non-moving party. In addition, the Court concluded that the matters raised by Plaintiff could not be viewed in isolation but must be considered as a whole because they had a mutually enforcing effect that produced the deprivation of the single, identifiable human need for a safe and sanitary environment. The Court found that the standard for deliberate indifference was likely an objective one rather than a subjective one, but that the record contained genuine issues of material fact as to this question in any event. Finally, the Court concluded that Plaintiff's protected activity was not fighting but speaking, as he contended that he had "ribbed" Zavada about their previous fight and this was the motivation for Zavada's allegedly retaliatory conduct.

On June 28, 2021, Defendants filed a motion for reconsideration,[3] and Plaintiff has

---

[3] Defendants inserted a lengthy footnote in their brief regarding their inclusion in the record and reliance on certain records that they objected to producing to Plaintiff. (ECF No. 134 at 5 n.2.) The Court does not find their explanation compelling.

submitted a response in opposition (ECF No. 137).[4]

## II. Standard of Review

The Court of Appeals has stated that:

> "The purpose of a motion for reconsideration," we have held, "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation and quotes omitted). *See also Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (reconsideration should not be used as a "second bite at the apple.") In this case, Defendants cite no intervening change in the law or availability of new evidence, so the motion raises only a claim that the Court committed a "clear error of law or fact."

### A. Fourteenth Amendment Claim

Defendants first contend that the Court erred in concluding that the assessment of "deliberate indifference" in Fourteenth Amendment substantive due process cases brought by pretrial detainees regarding conditions of prison confinement does not have a subjective component. They argue that the Court relied on case law from the Second Circuit while ignoring "binding precedent" from the Third Circuit.

---

[4] Plaintiff's response merely indicates that he "agrees with this Honorable Court's Memorandum Opinion and stands on [its] findings."

The Memorandum Opinion noted that, in addressing a Fourteenth Amendment claim related to excessive force, the Supreme Court held that:

> [T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. For one thing, it is consistent with our precedent. We have said that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham [v. Connor]*, 490 U.S. 386, 395, n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 [(1989)]. And in *Bell [v. Wolfish,]*, we explained that such "punishment" can consist of actions taken with an "expressed intent to punish." 441 U.S. 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 [(1979)]. But the *Bell* Court went on to explain that, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate non-punitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Id.*, at 561, 99 S.Ct. 1861. The *Bell* Court applied this latter objective standard to evaluate a variety of prison conditions, including a prison's practice of double-bunking.

*Kingsley v. Hendrickson*, 576 U.S. 379, 397-98 (2015).

The circuits are split on whether *Kingsley's* holding applies to other conditions of confinement claims. Some circuits have held that the same objective standard applies in other pretrial detainee Fourteenth Amendment contexts, including denial of medical care and conditions of confinement claims. *See Brawner v. Scott Cty.,* 14 F.4th 585, 593 (6th Cir. 2021) (medical care); *Hardeman v. Curran*, 933 F.3d 816, 822-23 (7th Cir. 2019) (lack of access to water); *Colbruno v. Kessler*, 928 F.3d 1155, 1161-63 (10th Cir. 2019); *Gordon v. County of Orange*, 888 F.3d 1118, 1120, 1122-25 (9th Cir. 2018) (medical needs); *Darnell v. Pineiro*, 849 F.3d 17, 34-35 (2d Cir. 2017) (overcrowding and eight other types of degrading conditions of confinement); *Castro v. County of L.A.*, 833 F.3d 1060, 1070-71 (9th Cir. 2016) (en banc). Others have declined to do so. *See, e.g., Strain v. Regalado*, 977 F.3d 984, 991 (10th Cir. 2020), *cert. denied*, 142 S. Ct. 312 (2021). The Third Circuit has not decided this issue.

In support of their motion for reconsideration about this issue, Defendants contend that this Court strayed from "binding Third Circuit precedent" (ECF No. 134 at 5) that is set forth in

*Edwards v. Northampton County*, 663 F. App'x 132 (3d Cir. 2016). In *Edwards*, the Court of Appeals stated:

> While we have not previously addressed the standard governing a pretrial detainee's conditions of confinement claim such as Edwards' in a precedential opinion, we have stated in dicta that the state of mind requirement for prisoners' failure to protect claims—"deliberate indifference"—applies also to pretrial detainees' claims. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991). Thus, we agree with the District Court and find no reason to apply a different standard here as we have applied the "deliberate indifference" standard both in cases involving prisoners, *see, e.g., Hamilton [v. Leavy,]* 117 F.3d [742,] 746 [(3d Cir. 1997)] (failure to protect), and pretrial detainees, *see, e.g., Colburn*, 946 F.2d at 1024 (detainee suicide). This is consistent with the holdings of our sister circuits, *see, e.g., Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009); *Tesch v. County of Green Lake*, 157 F.3d 465, 474-75 (7th Cir. 1998); *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996), as well as with the dictates of *Bell*.

*Id.* at 135.

There are several flaws in Defendants' argument. First, *Edwards* is not a precedential opinion and the Court of Appeals explicitly states that it has *not* addressed the standard governing a pretrial detainee's conditions of confinement claim in a precedential opinion. Moreover, although *Edwards* was decided after *Kingsley*, it includes no reference or discussion of it. Further, with respect to some of the case law from other circuits that the Third Circuit cited with approval in *Edwards*, the Second Circuit overruled *Caiozzo* in *Darnell* and in *Hardeman*, the Seventh Circuit distinguished *Tesch*, noting that it "applied the more demanding Eighth Amendment deliberate-indifference standard, as opposed to the objective inquiry that we apply here." 933 F.3d at 824.

Defendants also attempt to rely on *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012), in which the Third Circuit stated that "'[d]eliberate indifference' in this context is a subjective standard." *Id.* at 367. *Bistrian* was not a Fourteenth Amendment due process case, however; it was a Fifth Amendment case arising out of prison officials' alleged failure to protect an inmate from violence at the hands of another inmate. The contention that the *Bistrian* case established the standard for

5

Fourteenth Amendment conditions of confinement claims by pretrial detainees is directly refuted by the Third Circuit's later statement in *Edwards* that it had not previously addressed the standard governing a pretrial detainee's conditions of confinement claim in a precedential opinion.

Defendants also cite two other Third Circuit non-precedential cases, but neither of them cites *Kingsley* or is on point. *See Williams v. Delaware County Board of Prison Inspectors*, 844 F. App'x 469 (3d Cir. 2021) (which contains no discussion about the standard for deliberate indifference); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 & n.1 (3d Cir. 2017) (a case about lack of medical care that is analyzed under the Eighth Amendment).[5]

The Memorandum Opinion also noted that, in another Fourteenth Amendment case, the Court of Appeals "defined deliberate indifference as requiring a "conscious disregard of a substantial risk of serious harm." That is, "deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *L.R. v. School Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016) (footnotes omitted). In *L.R.*, because the teacher's conduct in releasing a child to a stranger was "so obvious" that it rose to the level of deliberate indifference, it satisfied the objective standard of the Fourteenth Amendment substantive due process clause. Defendants have not argued that the conditions Plaintiff describes did not present a risk of harm that was "so obvious" that it should be known.

---

[5] Defendants also cite several district court cases that applied a deliberate indifference standard in Fourteenth Amendment conditions of confinement claims. *See Moore v. Rosa*, 2021 WL 1143376, at *5 (E.D. Pa. Mar. 25, 2021) (when water flooded inmate's cell between 10 and 11 p.m. and had not been cleaned up when breakfast was served the next morning, hindering his ability to offer his morning prayers, he failed to allege sufficient facts showing that this failure was punitive); *Wilson v. Doe*, 2020 WL 1701709, at *8 (E.D. Pa. Apr. 8, 2020) (overcrowded conditions did not amount to "punishment"); *Coleman v. Hodges*, 2018 WL 6618459, at *4-5 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) (being placed in the RHU was not "punishment" per se and being deprived of a mattress, exercise and a shower for four days was insufficient). Even if these cases are not distinguishable from the facts of this case, they do not represent "binding Third Circuit precedent" on the issue.

In the Memorandum Opinion issued in this case, the Court predicted that, if presented with this specific question, the Court of Appeals for the Third Circuit would conclude that the *Kingsley* standard applies to conditions of confinement claims by pretrial detainees. However, as noted the Court's opinion, the application of either of these standards leads to the same result--the denial of Defendant's motion for summary judgment.

As noted in the Memorandum Opinion, there are genuine issues of material fact regarding the conditions at the FCP if the subjective deliberate indifference standard is applied. Defendants contend that there is no evidence that Miller and Zavada knew of the conditions about which Plaintiff complains and there is no evidence that Smith and Lenkey—both of whom Plaintiff described as "great guys"—failed to act to improve the situation. As noted in the Memorandum Opinion, however, while Defendants claim that Plaintiff never saw Miller or Zavada during his incarceration at the FCP, this contention is not responsive to the question of whether these individuals knew about the conditions at the prison.

Defendants submitted no evidence to show that they had no knowledge of these conditions. As noted in the previous opinion, in the absence of any evidence to the contrary, it defies logic to suggest that neither Miller nor Zavada was aware of the conditions in the FCP that allegedly had existed for months. Among other things, Plaintiff testified under oath that while he was in the SMU, raw sewage came up through the drains. His toilet constantly leaked and could not be used for "days on end." Problems were temporarily fixed but then recurred. After he was moved back to the C Range, he had to relieve himself in plastic bags and sewage repeatedly ran from the upstairs cell down to C block and across the floor. According to Plaintiff, this had been going on for quite some time and was constant. The smell in the C Range was foul. At times the floors were

covered with feces, that there was standing water consisting of urine in his cell and that the union asked for new boots due the existence of feces and urine on the floor.

Thus, at least as described by Plaintiff, the conditions were sufficiently obvious that even in the absence of direct evidence of deliberate indifference, the circumstantial evidence in the record creates an issue of fact for the jury. Moreover, as Plaintiff argued, there is some evidence that Miller and Zavada were aware of the conditions to which he was allegedly subjected through personal observation, notices and grievances, and still took no action. Plaintiff also noted that Miller posted several video recordings on the internet detailing the conditions at the FCP, including some of the issues Plaintiff has raised here. (Am. Compl. ¶ 105; TAC ¶ 132.) The Court concluded in its opinion that whether either defendant could have acted to remedy Plaintiff's conditions remains a contested issue.

Thus, regardless of the standard applied, there are genuine issues of material fact about Defendants' conduct that preclude summary judgment in their favor.

The Court also rejects Defendants' arguments about Smith and Lenkey. As reflected in the record, Smith was aware of the conditions at the FCP and had the power to move Plaintiff to a different cell, which he did only on one occasion. Similarly, Lenkey was aware of the conditions at the FCP and also had the power to move him to a different cell but Plaintiff could not recall if he did so. Plaintiff also testified that Lenkey was sympathetic "but there's only so much they can do, again, without going to the top. Unfortunately, when we went up to the top, it just never seemed to pan out well." (McLaughlin Dep. 76-79.) Construing this testimony in the light most favorable to Plaintiff as the non-moving party, the Court concluded that both had the authority to move him to a different cell and to report the conditions up the chain of command, which they may or may not have done. Defendants did not proffer affidavits or any other evidence to show that they either

8

took further action or lacked the power, authority or ability to take further action to respond to or remedy Plaintiff's complaints or the conditions to which he was exposed. Thus, whether either of these defendants deprived Plaintiff of a federal right, that is, exposure to prison conditions that deprived him of life's minimum necessities, is a disputed issue of fact. The Court concluded in its opinion that while neither Smith nor Lenkey caused the allegedly unsanitary conditions in the prison, whether they deprived Plaintiff of his rights by not moving him to a cell or area of the FCP where he would not be exposed to these conditions remains an issue in this case. Thus, based on the record, there are genuine issues of material fact as to their individual liability.

Defendants now argue that, because "the problems were allegedly facility wide, a change of cell assignment would have made no difference." (ECF No. 134 at 7.) They have not construed the evidence most favorable to Plaintiff as the non-moving party, however. Although Plaintiff's allegations suggest that some of problems were system-wide, others were not. As noted in the Memorandum Opinion, Defendants did not submit any evidence through affidavits, deposition testimony or otherwise to support their position. Therefore, their argument is unavailing.

### B. Retaliation Claim

Defendants contend that the Memorandum Opinion erred in accepting Plaintiff's "ribbing" of Zavada about a fight between them as his protected activity for purposes of his retaliation claim. They claim that Plaintiff admitted at his deposition that testified that in the years following the fight, Plaintiff's statements about the fight were "making it a bit more than it actually was" and that he "stretched the incident out a little bit." (ECF No. 134 at 9) (citing McLaughlin Dep. 86-89.) They also claim that he stated that he was trying to "egg on" an altercation, but this is inaccurate. His actual testimony was that "I probably egged it on to a little more than it actually was and it just—it really rubbed him wrong." (McLaughlin Dep. 87:23-88:1.)

9

To maintain a prima facie retaliation claim, Plaintiff must show that: (1) he engaged in constitutionally protected activity; (2) he suffered an adverse action that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take the adverse action. *Bistrian*, 696 F.3d at 376; *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001).

Defendants quote *Shaw v. Murphy*, 532 U.S. 223 (2001), for its statement that: "We nonetheless have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or "with the legitimate penological objectives of the corrections system." *Id.* at 229. The Supreme Court held in *Shaw* that a prisoner inmate did not possess a First Amendment right to provide legal assistance to fellow inmates beyond protection normally accorded to prisoners' speech. It did not hold that prisoners are precluded from exercising their First Amendment right to speak or criticize prison officials.

Defendants have not explained how it was a "legitimate penological objective of the corrections system" for Zavada to allegedly keep Plaintiff in deplorable conditions because he did not like what Plaintiff was saying about him. Nor have they supported an argument that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). Plaintiff was told both that he was initially placed in the SMU to protect him from further injury after he was punched by another inmate, and that Zavada was keeping him there because he was an "asshole." Thus, even if it is undisputed that Plaintiff was initially moved to the SMU for his own protection after he was punched by another inmate, his claim is that Zavada retaliated against him by insisting

10

that he remain there.

Simply put, Defendants have not demonstrated as a matter of law that Plaintiff's speech was unprotected. *See Eichenlaub v. Township of Indiana,* 385 F.3d 274, 282-83 (3d Cir. 2004) ("All speech is protected by the First Amendment except narrow categories that are entitled to no protection, including obscenity and 'fighting words.'"); *Torres v. Clark*, 522 F. App'x. 103, 105-06 (3d Cir. 2013) (holding that a statement in a letter written by a prisoner that somebody was going to break an officer's jaw if he kept acting like he is above the law was not constitutionally protected because it constituted a "true threat"). Thus, their motion for summary judgment was appropriately denied.

### III. Conclusion

For these reasons, Defendants' motion for reconsideration will be denied. An appropriate order follows.

Dated: February 10, 2022                                BY THE COURT:

/s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

cc:   William McLaughlin
      NU-1570
      SCI Benner Township
      301 Institution Dr.
      Bellefonte, PA 16823-1665